UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IRON WORKERS DISTRICT COUNCIL OF TENNESSEE VALLEY & VICINITY PENSION PLAN, Derivatively on Behalf of THE HARTFORD FINANCIAL SERVICES GROUP, INC., | ) ) ) ) ) ) | Case No. <br><br> VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT FOR BREACH OF FIDUCIARY DUTY, WASTE OF CORPORATE ASSETS, AND UNJUST ENRICHMENT |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| LIAM E. MCGEE, CHRISTOPHER J. SWIFT, ROBERT RUPP, CHARLES B. STRAUSS, MICHAEL G. MORRIS, TREVOR FETTER, ROBERT B. ALLARDICE, III, H. PATRICK SWYGERT, THOMAS A. RENYI, PAUL G. KIRK, JR., KATHRYN A. MIKELLS, and ROBERT H. BATEMAN, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) | |
| - and - | ) ) | |
| THE HARTFORD FINANCIAL SERVICES GROUP, INC, a Delaware corporation, | ) ) ) | |
| Nominal Defendant. | ) ) | DEMAND FOR JURY TRIAL |

Plaintiff, by its attorneys, submits this Verified Shareholder Derivative Complaint against the defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1.      This is a shareholder derivative action brought by plaintiff on behalf of nominal defendant The Hartford Financial Services Group, Inc. ("Hartford" or the "Company") against certain of its officers and directors seeking to remedy defendants' breaches of fiduciary duties, waste of corporate assets, and unjust enrichment.

2.      Hartford, together with its subsidiaries, is an insurance and financial services company.  Hartford's insurance segment provides various types of insurance, including property and casualty insurance, automobile-liability insurance, and, until recently, life insurance.  In September 2012, Hartford sold its life insurance business to Prudential Financial Inc. ("Prudential") for $615 million (the "Transaction") in support of a Company-wide strategic initiative to focus more on the property and casualty insurance, group benefits, and mutual funds businesses.

3.      This case arises out of the defendants' responsibility for Hartford's improper reporting of the financial impact the Transaction would have on the Company.  Due to a "material weakness" in the Company's internal controls, Hartford did not properly account for the Transaction.  In particular, the Company failed to impair $342 million worth of goodwill associated with the life insurance business and to properly accrue $191 million of premium liability as a result of the reinsurance transaction with Prudential.  Accordingly, the Company dramatically overstated its business health in financial filings with the U.S. Securities and Exchange Commission ("SEC") between September 2012 and February 2013.  These financial results, including the Company's reported net income, goodwill, and stockholders' equity for fiscal year 2012, were all materially

inflated and completely and utterly failed to adhere to U.S. Generally Accepted Accounting Principles ("GAAP").

4.      On March 1, 2013, the truth about the Company's overstated financial reporting was revealed.  On that date, the Company disclosed that its "previously filed financial statements for the third quarter of 2012 should no longer be relied upon" because the defendants' "error" in calculations concerning the Transaction turned a previously reported *net income figure of $350 million* for the full-year 2012 into a *net loss of $38 million* for the year, a $388 million swing.  As a result of this massive error, the Company was forced to restate its financial statements for the third quarter of the 2012 fiscal year.

5.      Responsibility for the wrongdoing alleged herein lies with the Individual Defendants (as defined below).  Under applicable law, they were required to ensure compliance with GAAP by instituting a system of internal controls over financial reporting.  They failed.  Plaintiff now brings this action against the Individual Defendants to repair the harm that they caused the Company.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction under 28 U.S.C. §1332 because plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.  This action is not a collusive action designed to confer jurisdiction on the court of the United States that it would not otherwise have.

7.      This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (i) Hartford maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

9.      Plaintiff Iron Workers District Council of Tennessee Valley & Vicinity Pension Plan was a shareholder of Hartford at the time of the wrongdoing complained of, has continuously been a shareholder since that time, and is a current Hartford shareholder.  Plaintiff is a citizen of Tennessee and Alabama.

10.     Nominal Defendant Hartford is a Delaware corporation with principal executive offices located at One Hartford Plaza, Hartford, Connecticut.  Thus, Hartford is a citizen of both Connecticut and Nevada.  Hartford, together with its subsidiaries, is an insurance and financial services company and it is among the largest providers of property and casualty insurance and investment products to both individual and business customers in the United States.

11.     Defendant Liam E. McGee ("McGee") is Hartford's Chief Executive Officer ("CEO"), Chairman of the Board of Directors (the "Board"), and a director and has been since October 2009 and President and has been since December 2009.  Defendant McGee is also a member of Hartford's Finance, Investment, and Risk Management Committee and has been since at least April 2012.  Defendant McGee knowingly, recklessly, or with gross negligence manipulated Hartford's earnings and financial position by overstating reported net income, goodwill, and

stockholders' equity, and understating the loss accrual for a premium deficiency associated with the Transaction in violation of GAAP.  In addition, defendant McGee knowingly, recklessly, or with gross negligence failed to implement and/or maintain adequate internal controls with respect to the Company's compliance with GAAP.  Hartford paid defendant McGee the following compensation as an executive:

| Fiscal Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | Change in Pension Value | All Other Compensation | Total |
|---|---|---|---|---|---|---|---|
| 2012 | $1,100,000 | $3,750,000 | $3,750,000 | $2,350,000 | $148,287 | $58,974 | $11,157,261 |

Defendant McGee is a citizen of Connecticut.

12.     Defendant Christopher J. Swift ("Swift") is Hartford's Executive Vice President and Chief Financial Officer ("CFO") and has been since March 2010.  Defendant Swift knowingly, recklessly, or with gross negligence manipulated Hartford's earnings and financial position by overstating reported net income, goodwill, and stockholders' equity, and understating the loss accrual for a premium deficiency associated with the Transaction in violation of GAAP.  In addition, defendant Swift knowingly, recklessly, or with gross negligence failed to implement and/or maintain adequate internal controls with respect to the Company's compliance with GAAP.  Hartford paid defendant Swift the following compensation as an executive:

| Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | Change in Pension Value | All Other Compensation | Total |
|---|---|---|---|---|---|---|---|
| 2012 | $825,000 | $1,100,000 | $1,100,000 | $1,650,000 | $161,984 | $50,873 | $4,887,857 |

Defendant Swift is a citizen of Connecticut.

13.     Defendant Robert Rupp ("Rupp") is Hartford's Executive Vice President and Chief Risk Officer and has been since October 2011.  Defendant Rupp knowingly, recklessly, or with gross negligence manipulated Hartford's earnings and financial position by overstating reported net

income, goodwill, and stockholders' equity, and understating the loss accrual for a premium deficiency associated with the Transaction in violation of GAAP. In addition, defendant Rupp knowingly, recklessly, or with gross negligence failed to implement and/or maintain adequate internal controls with respect to the Company's compliance with GAAP. Hartford paid defendant Rupp the following compensation as an executive:

| Fiscal Year | Salary | Bonus | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | Change in Pension Value | All Other Compen- sation | Total |
|---|---|---|---|---|---|---|---|---|
| 2012 | $600,000 | $1,235,000 | $700,000 | $700,000 | $1,200,000 | $58,550 | $21,000 | $4,514,550 |

Defendant Rupp is a citizen of Connecticut.

14.    Defendant Charles B. Strauss ("Strauss") is a Hartford director and has been since 2001. Defendant Strauss is also Chairman of Hartford's Finance, Investment, and Risk Management Committee, and a member of Hartford's Audit Committee has been since at least April 2012. Defendant Strauss knowingly or recklessly failed to implement and/or maintain adequate internal controls with respect to the Company's compliance with GAAP. In addition, defendant Strauss knowingly or recklessly manipulated Hartford's earnings and financial position by reviewing and approving improper statements overstating reported net income, goodwill, and stockholders' equity, and understating the loss accrual for a premium deficiency associated with the Transaction in violation of GAAP. Hartford paid defendant Strauss the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2012 | $151,000 | $150,000 | $1,965 | $302,965 |

Defendant Strauss is a citizen of Connecticut.

15.    Defendant Michael G. Morris ("Morris") is a Hartford director and has been since 2004. Defendant Morris was also Hartford's Presiding Director in at least April 2012. Defendant Morris is a member of Hartford's Audit Committee and Finance, Investment, and Risk Management

Committee and has been since at least April 2012.  Defendant Morris knowingly or recklessly failed to implement and/or maintain adequate internal controls with respect to the Company's compliance with GAAP.  In addition, defendant Morris knowingly or recklessly manipulated Hartford's earnings and financial position by reviewing and approving improper statements overstating reported net income, goodwill, and stockholders' equity, and understating the loss accrual for a premium deficiency associated with the Transaction in violation of GAAP.  Hartford paid defendant Morris the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2012 | $108,000 | $150,000 | $2,508 | $260,508 |

Defendant Morris is a citizen of Michigan.

16.     Defendant Trevor Fetter ("Fetter") is a Hartford director and has been since 2007. Defendant Fetter is also a member of Hartford's Audit Committee and Finance, Investment, and Risk Management Committee and has been since at least April 2012.  Defendant Fetter knowingly or recklessly failed to implement and/or maintain adequate internal controls with respect to the Company's compliance with GAAP.  In addition, defendant Fetter knowingly or recklessly manipulated Hartford's earnings and financial position by reviewing and approving improper statements overstating reported net income, goodwill, and stockholders' equity, and understating the loss accrual for a premium deficiency associated with the Transaction in violation of GAAP. Hartford paid defendant Fetter the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2012 | $126,000 | $150,000 | $717 | $276,717 |

Defendant Fetter is a citizen of Texas.

17.     Defendant Robert B. Allardice, III ("Allardice") is a Hartford director and has been since 2008.  Defendant Allardice is also Chairman of Hartford's Audit Committee and a member of

Hartford's Finance, Investment, and Risk Management Committee and has been since at least April 2012. Defendant Allardice knowingly or recklessly failed to implement and/or maintain adequate internal controls with respect to the Company's compliance with GAAP. In addition, defendant Allardice knowingly or recklessly manipulated Hartford's earnings and financial position by reviewing and approving improper statements overstating reported net income, goodwill, and stockholders' equity, and understating the loss accrual for a premium deficiency associated with the Transaction in violation of GAAP. Hartford paid defendant Allardice the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2012 | $149,500 | $150,000 | $1,965 | $301,465 |

Defendant Allardice is a citizen of New York.

18.     Defendant H. Patrick Swygert ("Swygert") is a Hartford director and has been since 1996. Defendant Swygert is also a member of Hartford's Finance, Investment, and Risk Management Committee and has been since at least April 2012. Defendant Swygert knowingly or recklessly failed to implement and/or maintain adequate internal controls with respect to the Company's compliance with GAAP. In addition, defendant Swygert knowingly or recklessly manipulated Hartford's earnings and financial position. Hartford paid defendant Swygert the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2012 | $112,500 | $150,000 | $1,965 | $264,465 |

Defendant Swygert is a citizen of Washington, D.C.

19.     Defendant Thomas A. Renyi ("Renyi") is a Hartford's Presiding Director and has been since at least January 2013 and a director and has been since 2010. Defendant Renyi is also a member of Hartford's Finance, Investment, and Risk Management Committee and has been since at

least April 2012.  Defendant Renyi knowingly or recklessly failed to implement and/or maintain adequate internal controls with respect to the Company's compliance with GAAP.  In addition, defendant Renyi knowingly or recklessly manipulated Hartford's earnings and financial position. Hartford paid defendant Renyi the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2012 | $152,500 | $150,000 | $1,965 | $304,465 |

Defendant Renyi is a citizen of Maine.

20.     Defendant Paul G. Kirk, Jr. ("Kirk") is a Hartford director and has been since 2010. Defendant Kirk is a member of Hartford's Finance, Investment, and Risk Management Committee and has been since at least April 2012.  Defendant Kirk knowingly or recklessly failed to implement and/or maintain adequate internal controls with respect to the Company's compliance with GAAP. In addition, defendant Kirk knowingly or recklessly manipulated Hartford's earnings and financial position.  Hartford paid defendant Kirk the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2012 | $137,500 | $150,000 | $2,913 | $290,413 |

Defendant Kirk is a citizen of Massachusetts.

21.     Defendant Kathryn A. Mikells ("Mikells") is a Hartford director and has been since 2010. Defendant Mikells is also a member of Hartford's Finance, Investment, and Risk Management Committee and has been since at least April 2012.  Defendant Mikells knowingly or recklessly failed to implement and/or maintain adequate internal controls with respect to the Company's compliance with GAAP.  In addition, defendant Mikells knowingly or recklessly manipulated Hartford's earnings and financial position.  Hartford paid defendant Mikells the following compensation as a director:

| Fiscal Year | Fees Paid in Cash | Stock Awards | All Other Compensation | Total |
|---|---|---|---|---|
| 2012 | $112,500 | $150,000 | $621 | $263,121 |

Defendant Mikells is a citizen of Illinois.

22.     Defendant Robert H. Bateman ("Bateman") was Hartford's Senior Vice President and Controller from August 2012 to May 2013.  Defendant Bateman held various other positions of increasing responsibility after joining the Company in 2004, including as Hartford's Senior Vice President, CFO for the Commercial Markets division, and CFO for Claims and the Company's Property & Casualty Runoff business.  Defendant Bateman was the principal accounting officer at the time when Hartford announced the Transaction and he resigned approximately two months after the Company announced a restatement related to the Transaction.  Defendant Bateman knowingly, recklessly, or with gross negligence manipulated Hartford's earnings and financial position by overstating reported net income, goodwill, and stockholders' equity, and understating the loss accrual for a premium deficiency associated with the Transaction in violation of GAAP.  In addition, defendant Bateman knowingly, recklessly, or with gross negligence failed to implement and/or maintain adequate internal controls with respect to the Company's compliance with GAAP. Defendant Bateman is a citizen of Connecticut.

23.     The defendants in ¶¶14-17 are referred to herein as the "Audit Committee Defendants."  The defendants in ¶¶11, 14-21 are referred to herein as the "Finance, Investment, and Risk Management Committee Defendants."  Collectively, the defendants identified in ¶¶11-22 are referred to herein as the "Individual Defendants."

## DUTIES OF THE INDIVIDUAL DEFENDANTS

**Fiduciary Duties**

24.     By reason of their positions as officers and directors of the Company, each of the Individual Defendants owed and owe Hartford and its shareholders fiduciary obligations of trust,

loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Hartford in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Hartford and not in furtherance of their personal interest or benefit.

25.     To discharge their duties, the officers and directors of Hartford were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company. By virtue of such duties, the officers and directors of Hartford were required to, among other things:

(a)     ensure the accuracy of the Company's financial statements in compliance with GAAP;

(b)     conduct the affairs of the Company in an efficient, business-like manner in compliance with all applicable laws, rules, and regulations so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock; and

(c)     remain informed as to how Hartford conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with applicable laws.

**Breaches of Duties**

26.     The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as officers and directors of Hartford, the absence of good faith on their part, and a reckless disregard for their duties to the Company that the Individual Defendants were aware or reckless in not being aware posed a risk of serious injury to the Company.

27.     The Individual Defendants breached their duty of loyalty and good faith by allowing defendants to cause, or by themselves causing, the Company to disseminate inflated financial statements in violation of GAAP, improper practices that wasted the Company's assets, and caused Hartford to incur substantial damage.

28.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of Hartford, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.  The Individual Defendants also failed to prevent the other Individual Defendants from taking such illegal actions.  As a result, and in addition to the damage the Company has already incurred, Hartford has expended, and will continue to expend, significant sums of money.

**Additional Duties of the Audit Committee Defendants**

29.     In addition to these duties, under its Charter in effect since at least September 2012, the Audit Committee Defendants, defendants Allardice, Fetter, Morris, and Strauss, owed specific duties to Hartford to assist the Board in monitoring "the integrity of the financial statements of the Company."  The Audit Committee was required to review the critical accounting policies and practices to be used at the Company, and ensure that Hartford's reported financial results complied with GAAP.  The Audit Committee was also charged with overseeing the Company's compliance with legal and regulatory requirements.  Moreover, the Audit Committee's Charter provides that defendants Allardice, Fetter, Morris, and Strauss were required to ensure that the Company had an adequate system of internal controls.  As Audit Committee members, defendants Allardice, Fetter, Morris, and Strauss were held to higher standards of expertise and were classified by the Board as "audit committee financial experts" as the term is defined in the SEC's rules and regulations.

**Additional Duties of the Finance, Investment, and Risk Management Committee Defendants**

30.     In addition to these duties, under its Charter in effect since at least September 2011, the Finance, Investment, and Risk Management Committee Defendants, defendants McGee, Allardice, Fetter, Kirk, Mikells, Morris, Renyi, Strauss, and Swygert, owed specific duties to Hartford to assist the Board in reviewing the Company's major risk exposures, and reviewing management processes supporting the Company's financial management and risk management activities.

## HARTFORD SELLS ITS LIFE INSURANCE BUSINESS TO PRUDENTIAL

31.     On September 27, 2012, Hartford announced the sale of its life insurance business to Prudential for $615 million.  The Transaction was structured as a reinsurance arrangement in which Prudential acquired the rights and obligations associated with approximately 700,000 Hartford life insurance policies.  The Transaction closed on January 1, 2013.

32.     Hartford sold its life insurance business due to a Company-wide initiative to narrow its focus on the property and casualty insurance, group benefits, and mutual funds businesses, each of which purportedly has a competitive market position, strong capital generating ability, and lower sensitivity to capital markets.  According to the Company, the decision to sell the life insurance business was "the result of management and the Board of Directors' rigorous evaluation of the [C]ompany's strategy and business portfolio conducted over … several quarters."

33.     Since the Transaction was announced, Hartford claimed that the Transaction would not generate a material gain or loss.  The Individual Defendants, however, failed to properly account for a goodwill write-down and a loss accrual for a premium deficiency associated with the Transaction.  As a result, defendants miscalculated the financial impact the Transaction would have on the Company.

## HARTFORD'S GAAP VIOLATIONS

34.     Financial statements filed with the SEC are required to comply with GAAP.  GAAP are principles recognized by the accounting profession as the conventions, rules, and procedures necessary to define accepted accounting practice at a particular time.  SEC Regulation S-X (17 C.F.R. §210.4-01(a)(1)) states that *financial statements filed with the SEC which are not prepared in compliance with GAAP are presumed to be misleading* and inaccurate, despite footnote or other disclosure.

35.     GAAP requires a restatement to occur when the originally issued financial statements are based on improper or fraudulent accounting practices.  As set forth in the Financial Accounting Standards Board's Accounting Standards Codification ("ASC") 250, the type of restatement made by Hartford is for a "*correction of an error in previously issued financial statements*."  ASC 250-10-5-4 defines an error in previously issued financial statements as "[*a*]*n error in recognition, measurement, presentation, or disclosure in financial statements resulting from mathematical mistakes, mistakes in the application of [GAAP], or oversight or misuse of facts that existed at the time the financial statements were prepared*."

36.     SEC Staff Accounting Bulletin ("SAB") 114, *Introductory Material*, summarizes GAAP materiality standards.  Among other items, SAB 114 says: "A matter is 'material' if there is a substantial likelihood that a reasonable person would consider it important."  *See* SAB 114, Topic 1, §M.1., *Financial Statements; Materiality – Assessing Materiality*.  SAB 99 also provides that intentional misstatements, even of immaterial items, may be illegal and constitute fraudulent financial reporting.  *See* SAB 114, Topic 1, §M.2., *Financial Statements; Materiality – Immaterial Misstatements That Are Intentional*.

37.     The Individual Defendants are responsible for Hartford's violations of GAAP because they knowingly or recklessly employed improper accounting and disclosure practices that misstated the financial results and position of Hartford.  In particular, the Individual Defendants failed to properly account for a goodwill write-down and a loss accrual for a premium liability associated with the Transaction.

38.     The Company was required to write-off all goodwill associated with its life insurance business once the sale of the life insurance business was probable and the impairment became reasonably estimable.  The impairment was reasonably estimable at the time the Transaction was announced.  The Individual Defendants should have caused Hartford to record the impairment because the agreed to purchase price of $615 million established the fair value of the life insurance business line, which eliminated the $342 million worth of goodwill associated with the life insurance business as of September 27, 2012.

39.     In addition to failing to timely write-down goodwill, Hartford also did not properly account for the total accrual of premium liability associated with the Transaction.  In particular, Hartford was required to accrue an additional $191 million in premium liability as a result of the reinsurance transaction with Prudential.  Hartford, however, did not report this liability in its financial statements in violation of GAAP.

40.     Hartford's financial misstatements were material.  GAAP explains that whether a misstatement is material is based on the following considerations:

   •      Whether the misstatement masks a change in earnings or other trends.

   •      Whether the misstatement hides a failure to meet analysts' consensus expectations for the enterprise.

   •      Whether the misstatement changes a loss into income or vice-versa.

   •      Whether the misstatement concerns a segment or other portion of the registrant's business that has been identified as playing a significant role in the registrant's operations or profitability.

*See* SAB 114, Topic 1, §M.1.

41.     Hartford's misstatements satisfy each of these criteria and thus, were material from both a quantitative and qualitative perspective.  Accordingly, the GAAP violations alleged herein are also material.

**Improper Statements in Violation of GAAP**

42.     Defendants' improper statements inflating the Company's business health began on September 27, 2012.  On that date, Hartford issued a press release announcing that Hartford is selling its life insurance business to Prudential for $615 million.  The press release assured investors that the Transaction would not generate a material gain or loss under GAAP.  The press release was improper because it failed to properly account for a goodwill write-down and a loss accrual for a premium deficiency associated with the Transaction.  Accounting for these balances would cause Hartford to record a material loss at the closing of the Transaction.  The press release set forth:

> The Hartford, which announced in March that it would sharpen its focus on its property and casualty, group benefits and mutual funds businesses, has signed a definitive agreement to sell its Individual Life insurance business to Prudential Financial, Inc. for cash consideration of $615 million. The sale, which is structured as a reinsurance transaction, is expected to close in early 2013, subject to obtaining regulatory approvals and customary closing conditions. The Individual Life segment reported core earnings excluding DAC unlock, of $129 million for the 12 months ended on June 30, 2012, or net income of $105 million. ***The Hartford does not expect to record a material net income gain or loss on the closing of the transaction, based on June 30, 2012, financials.***

43.     On November 1, 2012, Hartford issued a press release announcing the Company's third quarter 2012 financial results.  The press release reported net income of $401 million for the third quarter of 2012.  This figure was materially inflated, however, due to the Individual Defendants' accounting improprieties.  The press release stated:

> ***The Hartford (NYSE:HIG) reported net income of $401 million, or $0.83 per diluted share, for the third quarter of 2012, compared with net income of $60 million, or $0.11 per diluted share, in the third quarter of 2011. The company also reported that third quarter 2012 core earnings rose to $378 million, or $0.78 per diluted share, from $50 million, or $0.08 per diluted share, in the third quarter of 2011.***

"The **Hartford generated strong third quarter financial results**, reflecting continued P&C pricing momentum and low catastrophes," said Chairman, President and CEO Liam E. McGee.

44.     Also on November 1, 2012, Hartford filed its quarterly report on Form 10-Q with the SEC.  The Form 10-Q reiterated the Company's third quarter 2012 financial results set forth in the November 1, 2012 press release, and represented that goodwill as of September 30, 2012, totaled $1.006 billion.  Pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), the Form 10-Q contained signed certifications by defendants McGee and Swift, stating that the financial information contained in the Form 10-Q was accurate.  This Form 10-Q was improper because Hartford's reported goodwill was overstated by nearly 34%.  In truth, the Company was required to write-down its goodwill to $664 million.

45.     On February 4, 2013, Hartford issued a press release announcing its fourth quarter 2012 financial results.  For the year ended December 31, 2012, the Company reported **net income of $350 million**.  Defendant McGee touted the Company's purportedly "strong finish to 2012."  The press release was improper because the reported net income was materially overstated due to the defendants' failure to comply with GAAP.  After taking into account the goodwill write-down and loss accrual for a premium deficiency associated with the Transaction, as required by GAAP, the Company would book a **net loss of $38 million** for the year.  The press release stated:

"**The Hartford had a strong finish to 2012** and the fourth quarter concluded a year of strategic accomplishments for the company," said The Hartford's Chairman, President and Chief Executive Officer Liam E. McGee. "Following the successful close of the sales of the life businesses, we enter 2013 with a sharper focus on the P&C, Group Benefits and Mutual Funds businesses. We are also very pleased to share our capital management plans, which will be accretive to shareholders and effectively balance a number of critical goals for The Hartford, including paying down debt, returning capital to shareholders and further strengthening our financial flexibility to take actions to reduce risk in the legacy annuity liabilities."

\*   \*   \*

**The company also reported net income for the year ended Dec. 31, 2012 of $350 million**, or $0.66 per diluted share, compared with 2011 net income of $712 million, or $1.40 per diluted share. The decline in net income was largely due to the second quarter $587 million loss on extinguishment of debt incurred as a result of the debt refinancing and increases in 2012 for net realized capital losses due to hedging of the

company's runoff annuity blocks and for restructuring and other costs associated with the sales of the Retirement Plans, Individual Life and other businesses.

**Announcement of Restatement**

46.     Hartford announced its need for a restatement on March 1, 2013.  On that date, Hartford issued a press release disclosing that the Company would restate its third-quarter 2012 results because a "material weakness" in Hartford's internal control over financial reporting caused the Company to fail to properly account for a goodwill write-down and a loss accrual for a premium deficiency associated with the Transaction.  The Company explained that its "previously filed financial statements for the third quarter of 2012 should no longer be relied upon" because the defendants' "error" in calculations turned a previously reported net income figure of $350 million for the 2012 fiscal year into a net loss of $38 million.  The press release set forth, as follows:

> ***The Hartford today reported that it has filed an amended Form 10-Q with the U.S. Securities and Exchange Commission (SEC) to restate its results for the third quarter ended September 30, 2012***. The amended filing corrects for an error in the company's preliminary calculation of the gain or loss relating to the Individual Life business transaction under U.S. generally accepted accounting principles (GAAP). ***The company is now reporting a full year 2012 net loss of $38 million and shareholders' equity of $22.4 billion at December 31, 2012, as compared with the previously reported 2012 net income of $350 million and shareholders' equity of $22.8 billion.*** The company's 2012 core earnings of $1.4 billion are unchanged.

> \*   \*   \*

> ***In September 2012, The Hartford estimated that the Individual Life transaction would not generate a material gain or loss under GAAP. Following the identification of the error, the company estimates that the transaction will result in a GAAP loss of $393 million, after tax.*** This estimate is subject to change pending the final determination of net assets sold, transaction costs and other adjustments. The error resulted from the omission of the impact of certain reinsurance recoverable balances on the gain/loss calculations for the transaction.

> \*   \*   \*

> ***The revised third quarter 2012 financial results include a $388 million after-tax loss related to the transaction, which reflects the impairment of goodwill and the establishment of a loss accrual for premium deficiency.*** Net realized investment losses of $5 million, after tax, related to the transaction were included in the company's announced fourth quarter 2012 financial results.

*The company's previously filed financial statements for the third quarter of 2012 should no longer be relied upon. In addition, the company has determined that there was a material weakness in its internal control over financial reporting at September 30, 2012, which was remediated as of December 31, 2012.*

47.     Also on March 1, 2013, Hartford filed an amendment on Form 10-Q/A with the SEC restating its financial results for the third quarter of 2012 to account for the goodwill impairment and the loss accrual for a premium deficiency associated with the Transaction.  As a result, Hartford's reported net income of $401 million for the third quarter of 2012 was restated to only $13 million, an over *96%* decrease.  The following chart compares the Company's financial results for the third quarter of 2012, both before and after the restatement:

| Filing | Date | Period | Goodwill | Loss  Accrual (Reinsurance) | Net Income | Signatures |
|--------|------|--------|----------|-----------------------------|------------|------------|
| 10-Q | 11/1/2012 | Q3 2012 | $1,006 | $0 | $401 | Bateman, McGee [SOX], Swift [SOX] |
| 10-Q/A | 3/1/2013 | Q3 2012 | $664 | $533 | $13 | Bateman, McGee [SOX], Swift [SOX] |

*All numbers in millions

48.     The Company's restatement reveals that Hartford's earnings had been materially overstated.  For instance, the Company's March 1, 2013 Form 10-Q/A shows that Hartford's pre-tax loss was $533 million, *32.9%* greater than the net income previously reported.  The Form 10-Q/A also demonstrates that Hartford's after-tax loss was $393 million, accounting for *98%* of the previously reported net income.

49.     The fact the Hartford restated its financial statements is an admission that:

(a)     the financial results originally issued, the certification of financial results, and the public filings regarding *those results were materially false and misleading*;

(b)     the financial statements reported were incorrect based on information available to the Individual Defendants at the time the results were originally reported; and

(c)     the financial statements and disclosures could no longer be relied upon as being accurate.

50.     The Company's restatement was caused by the Company's inadequate internal controls.  Hartford's inept control structure caused the Individual Defendants to improperly calculate the financial impact of the sale of the Company's life insurance business to Prudential.    The Company admitted that "there was a material weakness in its internal control over financial reporting at September 30, 2012."  This "material weakness" in Hartford's internal control over financial reporting caused the Company to fail to properly account for the goodwill write-down and the loss accrual for a premium deficiency associated with the Transaction.

## DAMAGES TO HARTFORD

51.     As a result of the Individual Defendants' improprieties, Hartford disseminated improper financial statements concerning the Company's business health.   These improper statements have demolished Hartford's credibility, corporate image, and goodwill.  For at least the foreseeable future, Hartford will suffer from what is known as the "liar's discount," a term applied to the stocks of companies which have been implicated in improper behavior and have misled the investing public, such that Hartford's ability to raise equity capital or debt on favorable terms in the future is now impaired.

52.     Further, as a direct and proximate result of the Individual Defendants' actions, Hartford has expended, and will continue to expend, significant sums of money.  Such expenditures include, but are not limited to:

(a)     costs incurred as a result of the untimely goodwill write-down and loss accrual associated with the Transaction;

(b)    costs incurred from internal investigations into the accounting impact caused by the goodwill write-down and loss accrual associated with the Transaction;

(c)    costs incurred as a result of the restatement of the Company's financial statements, including, but not limited to, accounting, legal, and consulting fees; and

(d)    costs incurred from compensation and benefits paid to the defendants who have breached their duties to Hartford.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

53.    Plaintiff brings this action derivatively in the right and for the benefit of Hartford to redress injuries suffered, and to be suffered, by Hartford as a direct result of breaches of fiduciary duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by the Individual Defendants.  Hartford is named as a nominal defendant solely in a derivative capacity. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

54.    Plaintiff will adequately and fairly represent the interests of Hartford in enforcing and prosecuting its rights.

55.    Plaintiff was a shareholder of Hartford at the time of the wrongdoing complained of, has continuously been a shareholder since that time, and is a current Hartford shareholder.

56.    The current Board of Hartford consists of the following nine individuals: defendants McGee, Allardice, Fetter, Kirk, Mikells, Morris, Renyi, Strauss, and Swygert.  Plaintiff has not made any demand on the present Board to institute this action because such a demand would be a futile, wasteful, and useless act, as set forth below.

**Demand Is Excused Because a Majority of the Current Board Faces a Substantial Likelihood of Liability for Their Misconduct**

57.    Defendant McGee, the Company's CEO and Chairman of the Board, breached his fiduciary duty by manipulating Hartford's earnings and financial position.  Defendant McGee signed

the improper financial statements alleged herein that inflated reported net income and goodwill, and understated the loss accrual for a premium deficiency associated with the Transaction in violation of GAAP. Additionally, defendant McGee failed to implement adequate internal controls and procedures to ensure the accuracy of the Company's disclosures. Defendant McGee also failed to prevent the other Individual Defendants from committing this wrongdoing. As a result of defendant McGee's course of conduct, the Company was forced to undergo a restatement. Accordingly, defendant McGee faces a substantial likelihood of liability for his breach of fiduciary duties, so any demand upon him is futile.[1]

58.     Defendants Allardice, Fetter, Morris, and Strauss were members of the Audit Committee during the misconduct detailed herein. As Audit Committee members, defendants Allardice, Fetter, Morris, and Strauss were held to higher standards of expertise and were classified by the Board as "audit committee financial experts" as the term is defined in the SEC's rules and regulations. Defendants Allardice, Fetter, Morris, and Strauss had additional and heightened responsibilities under the Audit Committee Charter to oversee the Company's compliance with legal and regulatory requirements and the Company's financial statements. Accordingly, the Audit Committee Defendants are responsible for knowingly or recklessly allowing the defendants' manipulation of the Company's financial position. Despite the fact that the Audit Committee was specifically tasked with overseeing the system of internal controls and procedures for financial reporting and the integrity of Hartford's financial reporting process, defendants Allardice, Fetter, Morris, and Strauss knowingly or recklessly: (i) failed to properly account for the goodwill write-

---

[1] Further rendering demand upon defendant McGee futile, Hartford discloses in its SEC filings that defendant McGee is not considered an independent director under the listing standards of the NASDAQ Global Market and rules promulgated by the SEC.

down and the loss accrual for a premium deficiency associated with the Transaction; and (ii) failed to maintain reliable systems of financial controls to ensure compliance with GAAP.  As such, defendants Allardice, Fetter, Morris, and Strauss face a substantial likelihood of liability for their breach of fiduciary duties, rendering any demand upon them futile.

59.     Defendants McGee, Allardice, Fetter, Kirk, Mikells, Morris, Renyi, Strauss, and Swygert, all nine members of the Board, were members of the Finance, Investment, and Risk Management Committee during the misconduct detailed herein.  Pursuant to the Finance, Investment, and Risk Management Committee Charter, defendants McGee, Allardice, Fetter, Kirk, Mikells, Morris, Renyi, Strauss, and Swygert were and are responsible for reviewing the Company's major risk exposures, and reviewing management processes supporting the Company's financial management and risk management activities.  The life insurance segment was an important part of Hartford's business.  In 2011, Hartford reported net income from its life insurance business of $133 million, or over 20% of the Company's core earnings   Hartford sold its life insurance business due to a company-wide initiative to narrow its focus on the property and casualty insurance, group benefits, and mutual funds businesses.  According to the Company, the decision to sell the life insurance business was "the result of management and the Board of Directors' rigorous evaluation of the [C]ompany's strategy and business portfolio conducted over … several quarters."  Despite the importance of this strategy shift for the Company, their involvement leading up to the Transaction, and their duties under the Finance, Investment, and Risk Management Committee Charter, defendants McGee, Allardice, Fetter, Kirk, Mikells, Morris, Renyi, Strauss, and Swygert failed to review all reasonably available information prior to approving the Transaction and miscalculated the financial impact the Transaction would have on the Company.  In particular, defendants McGee, Allardice, Fetter, Kirk, Mikells, Morris, Renyi, Strauss, and Swygert overstated the goodwill and

understated the loss accrual for a premium deficiency associated with the Transaction. This "error" in calculations turned a previously reported net income figure of $350 million for the full-year 2012 into a net loss of $38 million for the year. Accordingly, defendants McGee, Allardice, Fetter, Kirk, Mikells, Morris, Renyi, Strauss, and Swygert each face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

60.     The acts complained of constitute violations of the fiduciary duties owed by Hartford's officers and directors and are incapable of ratification.

61.     Hartford has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein. Despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the Individual Defendants and the current Board have not filed any lawsuits against themselves or others who were responsible for the wrongful conduct to attempt to recover for Hartford any part of the damages Hartford suffered and will suffer thereby. The Board's stubborn failure to investigate, correct, and commence legal action against those responsible for the misconduct alleged herein demonstrates that the Board is hopelessly incapable of independently addressing any legitimate demand.

62.     Plaintiff has not made any demand on the other shareholders of Hartford to institute this action since such demand would be a futile and useless act for at least the following reasons:

(a)     Hartford is a publicly held company with over 455.8 million shares outstanding and thousands of shareholders;

(b)     making demand on such a number of shareholders would be impossible for plaintiff who has no way of finding out the names, addresses, or phone numbers of shareholders; and

(c)     making demand on all shareholders would force plaintiff to incur excessive expenses, assuming all shareholders could be individually identified.

## COUNT I

### Against the Individual Defendants for Breach of Fiduciary Duty

63.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

64.     The Individual Defendants owed and owe Hartford fiduciary obligations.  By reason of their fiduciary relationships, the Individual Defendants owed and owe Hartford the highest obligation of good faith, loyalty, and due care.

65.     Each of the Individual Defendants violated and breached their fiduciary duties.  More specifically, the Individual Defendants violated their duty of loyalty by creating a culture of lawlessness within Hartford, and/or consciously failing to prevent to Company from engaging in the unlawful acts complained of herein.  The Individual Defendants caused or allowed the improper financial statements alleged herein.  Moreover, the Individual Defendants failed to implement and/or maintain adequate internal controls that would police these improper financial statements and avoid the need for a restatement.

66.     The Audit Committee Defendants, Allardice, Fetter, Morris, and Strauss, failed to ensure that management had in place a system of internal controls to ensure compliance with GAAP. Defendants Allardice, Fetter, Morris, and Strauss completely and utterly failed in their duty of oversight as required by the Audit Committee Charter in effect at the time.  Moreover, the Audit Committee Defendants breached their duty of loyalty by reviewing and approving improper statements manipulating Hartford's earnings and financial position in violation of GAAP.

67.     The Finance, Investment, and Risk Management Committee Defendants, McGee, Allardice, Fetter, Kirk, Mikells, Morris, Renyi, Strauss, and Swygert, miscalculated the financial impact the Transaction would have on the Company.  Accordingly, defendants McGee, Allardice,

Fetter, Kirk, Mikells, Morris, Renyi, Strauss, and Swygert failed in their duties of financial management and risk management as required by the Finance, Investment, and Risk Management Committee Charter in effect at the time.

68.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary duties, Hartford has sustained substantial damages.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

69.     Plaintiff, on behalf of Hartford, has no adequate remedy at law.

## COUNT II

### Against the Individual Defendants for Waste of Corporate Assets

70.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

71.     As a result of the misconduct described above, the Individual Defendants have wasted corporate assets by forcing the Company to expend valuable resources on the restatement.  In addition, the Individual Defendants have caused Hartford to waste its assets by paying improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duty.

72.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

73.     Plaintiff, on behalf of Hartford, has no adequate remedy at law.

## COUNT III

### Against All Individual Defendants for Unjust Enrichment

74.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

75.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Hartford.  The Individual Defendants were unjustly enriched as a result of the compensation and director remuneration they received while breaching fiduciary duties owed to Hartford.  The Individual Defendants received excessive compensation for 2012 due to the fact that the compensation was based (at least in part) on false financial results.

76.     Plaintiff, as a shareholder and representative of Hartford, seeks restitution from these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by these defendants, and each of them, from their wrongful conduct and fiduciary breaches.

77.     Plaintiff, on behalf of Hartford, has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment as follows:

A.     Against the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duty, waste of corporate assets, and unjust enrichment;

B.     Directing Hartford to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect the Company and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote, resolutions for amendments to the Company's By-Laws or Articles of Incorporation and taking such other action as may be necessary to place before shareholders for a vote of the following Corporate Governance Policies:

(i)     a proposal to strengthen the Company's internal controls over financial reporting and ensuring compliance with GAAP;

(ii)    a proposal to strengthen the Company's oversight over the assets and liabilities in its numerous subsidiaries;

(iii)    a proposal to strengthen the Company's disclosure controls;

(iv)    a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the Board; and

(v)    a provision to permit the shareholders of Hartford to nominate at least three candidates for election to the Board;

C.    Awarding to Hartford restitution from the Individual Defendants, and each of them, and ordering disgorgement of all profits, benefits, and other compensation obtained by the Individual Defendants;

D.    Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs and expenses; and

E.    Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

DATED: June 6, 2013                    ROBBINS ARROYO LLP
                                       BRIAN J. ROBBINS
                                       FELIPE J. ARROYO
                                       SHANE P. SANDERS
                                       KEVIN S. KIM


                                       _/s/ Brian J. Robbins_
                                       BRIAN J. ROBBINS (CT Bar No. 417036)

                                       600 B Street, Suite 1900
                                       San Diego, CA 92101
                                       Telephone: (619) 525-3990
                                       Facsimile: (619) 525-3991
                                       E-mail: brobbins@robbinsarroyo.com
                                              farroyo@robbinsarroyo.com
                                              ssanders@robbinsarroyo.com

kkim@robbinsarroyo.com

AGEE OWENS, LLC
LYNN AGEE
3340 Perimeter Hill Drive
Nashville, TN 37211
Telephone: (615) 831-6799
Facsimile: (615) 834-7741
E-mail: lagee@ageeowenslaw.com

THE WARNER LAW FIRM
PAUL T. WARNER
11123 McCracken Lane, Suite A
Cypress, TX 77429
Telephone: (281) 664-7777
Facsimile: (281) 664-7774
E-mail: pwarner@warner-law.net

Attorneys for Plaintiff

866662